58 So.2d 443

## GEHRKEN v. TYLER et al.

### 6 Div. 87.

Supreme Court of Alabama.
April 3, 1952.

Application for Rehearing Withdrawn
May 9, 1952.

Lange, Simpson, Robinson & Somerville, Birmingham, for appellees.

Wm. S. Pritchard, Winston B. McCall and Pritchard & McCall, all of Birmingham, for appellant.

LAWSON, Justice.

This is a proceeding in equity by Dr. Henry S. Gehrken against Dr. Richard C. Tyler and Norwood Clinic, Inc., a corporation.

The real controversy is between Dr. Gehrken and Dr. Tyler, who for a number of years were partners in the eye, ear, nose and throat department of the Norwood Clinic in Birmingham.

Norwood Clinic is made a party respondent for the reason it retains in its possession certain money earned by its eye, ear, nose and throat department, which money the Clinic refused to distribute due to the controversy between the two doctors as to the amount of money to be distributed to each of them.

Norwood Clinic functions substantially in the manner hereafter described. It maintains a number of departments, staffed by doctors selected by the Clinic. The Clinic serves as administrator of the financial and business affairs of the doctors, keeps their books and records and collects all accounts receivable. After paying the costs of operation of a given department, the Clinic distributes monthly the net income of each department to the doctors in the department, in amounts which accord with the partnership agreement where the doctors in a department are practicing as partners.

The complainant, Dr. Gehrken, became connected with the eye, ear, nose and throat department of the Norwood Clinic in 1929. He was a partner of Dr. Hayes, who died in the spring of 1937. We will refer hereafter to that department as the E.E.N.T. department.

In August or September, 1937, the respondent, Dr. Tyler, with the approval of the Clinic, became a partner of Dr. Gehrken. Both doctors did ear, nose and throat work. Dr. Gehrken did practically all the eye work. There was no written partnership agreement, but the existence of a partnership is admitted by all parties. At the time the oral partnership agreement was entered into there was no understanding between the parties as to the duration of the partnership.

During the first few years of the partnership, Dr. Gehrken received more money than Dr. Tyler, but in 1943 it was agreed that the net income of the department be divided equally between the two doctors. For a number of years Doctors Gehrken and Tyler practiced together in complete harmony and with much success.

In February, 1947, it was determined that Dr. Gehrken had cancer of the throat. He was operated on in a distant city. He returned to the Clinic in January, 1948. A disagreement arose between the two doctors in August, 1948. Efforts to settle their differences having failed, this bill was filed by Dr. Gehrken on March 29, 1949. In his bill Dr. Gehrken seeks dissolution of the partnership, an accounting and settlement of the partnership affairs.

Dr. Gehrken in his bill avers in substance that the partnership was in effect at the time of the filing of the bill; that upon dissolution he is entitled to receive fifty per cent of the net earnings of the E.E.N.T. department for the year 1948 and the month of January, 1949, and fifty per cent of the assets of the partnership such as medical instruments and equipment, furniture and fixtures, and accounts receivable. An accounting is sought to determine the amount of profits earned by the partnership during 1948 and January, 1949, and to determine the value of the assets of the partnership.

In his answer, Dr. Tyler admitted the partnership had existed but averred it was terminated in February, 1947, when Dr. Gehrken underwent his operation, or on January 1, 1948, as the result of an agreement between them wherein for a sum of $12,000 Dr. Gehrken sold all his interest in the partnership. The Clinic adopted as its answer to the complaint the answer filed by Dr. Tyler.

The cause was heard orally by the trial court. The evidence consisted in the main of the testimony of the two doctors and of certain documents.

The trial court rendered a decree wherein the matter was referred to the register to state an account between the two doctors based on other provisions of the decree, which provisions as here pertinent are as follows:

"Ordered, Adjudged and Decreed by the Court as follows:

"1. That the partnership between complainant and respondent, Richard E. Tyler, was terminated by act of the partner Henry S. Gehrken, September 15, 1948, and it is hereby dissolved by Order of the Court effective as of said date.

"2. That the partnership arrangement between complainant and respondent Tyler, whereby each would receive fifty percent of the partnership earnings was modified November 3, 1947, affecting distribution of October 1947 collections and collections thereafter made for said partnership up to and including September 15, 1948, and that Dr. Gehrken's net profits from said partnership during said period is hereby fixed at $1000.00 per month.

"3. That the partnership assets, other than accounts collectible as hereinafter set out, were of the reasonable market value of $2874.85 as of the date the said partnership was terminated.

"4. That complainant and respondent, Dr. Tyler, own, share and share alike, partnership accounts earned prior to October 1, 1947, and now uncollected and such earnings collected since September 15, 1948, and that they should share equally in the collections of such earnings. All other collections and earnings from said business are the property of Dr. Tyler."

Thereafter, on motion of complainant, the trial court modified the order of reference so as to make more specific the status of the account between the parties at certain dates not provided by the original decree. It is unnecessary to set out here the provisions of the decree modifying the order or decree of reference.

The appeal to this court is by the complainant, Dr. Gehrken. There is no cross-appeal nor cross-assignment of errors.

As before shown, the trial court decreed that the partnership was terminated on September 15, 1948. This is not in accord with the position taken by either party in their respective pleadings. But this part of the decree appealed from is not questioned. Without dispute the evidence shows that on or about September 15, 1948, Dr. Gehrken left the Clinic and never returned.

Complainant below, appellant here, strenuously insists that the trial court erred in holding that the partnership agreement whereby the net proceeds of the partnership should be divided equally between the doctors was modified on November 3, 1947, as of October 1, 1947, so as to entitle Dr. Gehrken to receive from the partnership earnings only the sum of $1,000 monthly from October 1, 1947, through September 15, 1948, the date on which the trial court found the partnership was terminated.

As before shown, Dr. Gehrken had to leave the Clinic in February, 1947, because of his illness. He continued to receive fifty per cent of the net proceeds of the partnership, less the comparatively small salary paid doctors to assist Dr. Tyler. In other words, the salary of these doctors was not deducted from the entire partnership earnings, but from Dr. Gehrken's fifty per cent. After Dr. Gehrken returned to his home in Birmingham, but before he returned to the Clinic, Dr. Tyler wrote him the following letter on November 3, 1947:

"The Norwood Clinic
2401 16th Avenue, North
Birmingham, Ala.

"Opthalmology and
Oto-Laryngology
Henry S. Gehrken, M.D.
Richard E. Tyler, M.D.

November 3, 1947

"Dear Gerk:

"I know you realize that we must make some different division of collections in our Department. I have given this very careful thought over the period of the last two months, have talked in the clinic with numbers of people and have consulted especially with Dr. Carraway, and while they have been most helpful, they have not been able to give me anything more than an idea of what should be done.

"On my own initiative, I have thought that the following plan would

solve our problem for the present. As I told you in the office, I would very much dislike to do anything that would hurt you in any way, this I feel you understand. This solution is for the time being. Later we will make an additional adjustment one way or another, depending on how much work you decide you want to do when you come back, and whether or not you want to limit your work to the eye department, or the eye, ear, nose and throat department.

"My plan is simply for Mr. Mowry to send you a check each month from the Department without your sharing in the expenses of the office. As I told you when I talked with you, in this new move we are making, there will be some five thousand dollars or more spent for equipment in the ear, nose and throat department that I do not feel is fair to you for you to share in the expense. Also, the question has come up about your share of stock in the new building, which I feel you should not be burdened with any more than the amount you already have. The new building has cost a great deal more than we figured on at first, and all of us have had our assessments raised a great deal more than was originally planned.

"Considering these factors, I am enclosing a check for $1,000.00 for this month as a solution to our problem for now. Possibly we can work out some different solution to this problem for the months to follow. We all want you to come back just as soon as you can, but we do not want you to jeopardize yourself in coming too soon.

"With kindest personal regards, I remain

"Yours truly,
"Dick
"Richard E. Tyler, M.D."

The Mr. Mowry referred to in the letter above set out was the business director of the Clinic, under whose supervision the affairs of the various departments were conducted, including the distribution of the net proceeds of a partnership in accordance with the agreement of the partners.

The check referred to in the letter was from receipts of the E.E.N.T. department for the month of October, 1947. Dr. Gehrken accepted the check and cashed it. He made no protest to Dr. Tyler nor to Mr. Mowry. He cashed similar checks for the months of November and December, 1947.

In January, 1948, Dr. Gehrken returned to the Clinic and remained there until September 15, 1948. According to Dr. Gehrken, he did full-time work and in fact more work during that period than Dr. Tyler. Dr. Tyler's testimony is to the opposite effect. The trial court was amply justified in finding that Dr. Gehrken had not fully recovered at the time he returned to the Clinic and in fact had not fully recovered at the time of the trial.

But whatever may have been the physical condition of Dr. Gehrken after he returned to the Clinic, the fact remains that he continued to accept as his part of the income of the partnership the sum of $1,000 per month through the month of August, 1948. A check for a similar amount was sent Dr. Gehrken by the Clinic for the month of September, 1948. He returned this check uncashed. The checks for October and November, 1948, were retained by Dr. Gehrken. He did not cash them.

With every check sent Dr. Gehrken he was given a statement showing the receipts of the department for that month, the expenses of the department, and the distribution of the net proceeds between himself and Dr. Tyler. In every instance the statement showed that the $1,000 received by Dr. Gehrken was considerably less than fifty per cent of the net proceeds of the department and that Dr. Tyler was receiving all the net proceeds less the $1,000 received by Dr. Gehrken.

■ It is beyond question that Dr. Gehrken and Dr. Tyler had the right to agree as to the amount which each of them was to receive from the partnership. In our opinion the trial court, under the evidence in this case, was fully justified in finding that Dr. Tyler's offer contained in the letter of November 3, 1947, was accepted by Dr. Gehrken. Dr. Gehrken having acquiesced over a period of months in the suggestions and offers made by Dr. Tyler, and no agree-

ment to the contrary having been reached before Dr. Gehrken withdrew from the partnership on September 15, 1948, we are of the opinion that the trial court correctly fixed Dr. Gehrken's share of the profits to be $1,000 per month from October 1, 1947, through September 15, 1948.

We are of the further opinion that the evidence, which, as before indicated, was taken before the trial court, fully supports the other provisions of the decree.

The failure of the trial court to decree that the good will of the partnership between Dr. Gehrken and Dr. Tyler was a firm asset to be accounted for on dissolution does not preclude the register from considering that factor under Item Five of the modified decree of reference.

The decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and BROWN and STAKELY, JJ., concur.